No. 23-1902

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

John Anthony Castro,
*Appellant,*

*v.*

New Hampshire Secretary of State David Scanlan
And
Donald John Trump,
*Appellees.*

_____

**Motion to Stay Mandate Pending a Petition for Certiorari**

_____

Pursuant to Fed. R. App. P. 41(d), Appellant John Anthony Castro moves this Honorable Court to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court and, in support thereof, shows the following substantial questions and good cause for delay:

1.  The Court claimed that, at the time the Complaint was originally filed on September 5, 2023, Plaintiff did not show he was actually competing for votes in New Hampshire.

2.  Appellant's Verified Complaint sufficiently alleged that he was "directly and currently competing against Donald J. Trump for the Republican

nomination for the Presidency of the United States." The Court acknowledged it should not second-guess self-assessments of political campaigns.

3. The evidentiary hearing in New Hampshire found that Appellant had a campaign website, which incurred hosting costs, well before September 5, 2023. Thus, Appellant had confirmed campaign expenses prior to the case filing.

4. It is common knowledge that websites are available to be viewed by every resident and voter in the state of New Hampshire.

5. The evidentiary hearing in New Hampshire found that Appellant had announced his candidacy on Twitter on November 18, 2021.

6. It is common knowledge that digital competitive activities target New Hampshire voters.

7. The evidentiary hearing in New Hampshire found that Appellant had filed a federal lawsuit against the Federal Election Commission in 2022 in an effort to have Donald John Trump disqualified as a candidate.

8. It is common knowledge that seeking to disqualify a candidate is an extremely competitive act, which occurred before the case was filed on September 5, 2023.

9. The evidentiary hearing in New Hampshire found that Appellant had raised $677 in contributions from unrelated donors via WinRed. Thus, Appellant had confirmed campaign contributions.

10. All of these acts occurred prior to the case being filed on September 5, 2023.

11. As such, the Court's conclusions that competition was entirely "non-existent" is false.

12. Moreover, the Court's claim that Appellant admitted to not engaging in campaign activities in New Hampshire was only partially true since digital campaign activities targeted New Hampshire voters.

13. The Court overlooked the modern reality of the effectiveness of digital campaign activities with no boots-on-the-ground in-state activities. Appellant's entire tax law firm was built exclusively on digital advertisements on Google and Facebook back in 2013 when many people did not consider that a viable method of legal marketing.

14. Fed. R. Civ. P. 8(d)(3) specifically allows a party to "state as many separate claims and defenses as it has, *regardless of consistency*." For this reason, the Verified Complaint stated that Appellant would be either be on the ballot or compete as a substantive write-in. This Court misapprehended this inconsistency, which is expressly permitted by the Federal Rules of Civil Procedure, to mean that Appellant was uncertain and tantamount to a "self-declaration" of candidacy akin to an average voter.

15. Appellant was unable to file his New Hampshire Declaration of Candidacy earlier because of the arbitrary time period mandated by state law.

16. Appellant submitted a Verified Complaint specifically stating his intent to appear on the New Hampshire Republican Primary Ballot.

17. The Verified Complaint, Verification Form on Page 18 of 19, clearly states "I Intend to… appear on the 2024 Republican primary ballot in this state" and was executed on September 1, 2023, before the case was filed on September 5, 2023.

18. Appellant followed through with this statement of intent.

19. The U.S. Supreme Court held in *Golden v. Zwickler*[1] that it is permissible for courts to determine the likelihood that a party will follow through with a stated intent, which has been recognized by this Circuit in *McCollester v. City of Keene*.[2] In this case, there was no need to make that determination since Appellant followed through prior to the Court rendering judgment. Hence, applying the time-of-filing rule would evidence of stated intent due to a deferred timeframe followed by the act actually being done.

20. As such, the ruling that "after Castro filed the operative complaint, he expressed his intent to travel to New Hampshire on October 11 to file his declaration of candidacy and pay the $1,000 filing fee to appear on the state's 2024 Republican

---

[1] 394 U.S. 103 (1969).
[2] *See* 668 F.2d 617, 620 (1st Cir. 1982).

presidential primary ballot" is verifiably false. The Verification page executed before the filing of the Verified Complaint and attached thereto as an integral part of the Verified Complaint clearly and indisputably contradicts the Court's findings.

21. This Court violated the Political Question Doctrine by holding that a "nominal appearance on the ballot," despite paying a $1,000 filing fee, is insufficient to be a "candidate."[3] The $1,000 filing fee is a campaign expense and cost of competition. The evidentiary record shows that Donald John Trump's expert witness agreed that Appellant would lose a few votes as a result of Donald John Trump's presence on the ballot. The Court fails to provide judicially manageable standards on how to assess whether a candidate is competing.

22. This Court cited the U.S. District Court for the Western District of Tennessee's decision in *Liberty* for the proposition that one must be "truly in competition" while ignoring that the Court based that upon a finding that the plaintiff in that case failed to show "that his name will appear on the ballot."[4]

---

[3] The Court also inconsistently relies on *Sibley* that focused solely on whether the person was a candidate.

[4] *See Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 801 (W.D. Tenn. 2012). The court also cited other factors as well such as the lack of campaigning, the lack of evidence of voter support, or a claim that the other candidate's presence on the ballot would harm his candidacy, but they were all stated as separate and distinct factors; any of which would suffice a finding of candidacy and, therefore, standing.

23. The Court's reliance on *Sibley*[5] certainly challenges the Verification Page's alternative claim, permissible under Fed. R. Civ. P. 8(d)(3), that write-in candidacy would suffice to confer standing. Nevertheless, for the reasons stated above, the other claim that Appellant would secure ballot access survives.

24. *Carney* is a more recent version of *Golden v. Zwickler* confirming that standing can be found on an "imminent" injury that has not yet occurred. As the Court pointed out, Appellant filed his Declaration of Candidacy on the first day permitted by state law only 5 weeks after filing his complaint. In effect, the Court held that 5 weeks is not imminent, which is contradicted by *Carney*.

25. Lastly, the Court incorrectly claimed that, in *Becker*, this Court claimed "**we** were careful in *Becker* not to adopt a rule that would grant standing to any political entrant." First, this quote was from a single concurrence opinion, so the use of "we" is misleading. Second, the Majority Opinion, in Footnote 4, specifically refuted the criticism when it held the following:

> "The concurrence argues that… our granting [of] standing effectively 'grants standing to any political entrant to challenge any election regulation to which they might someday be subject.' Our holding is nowhere near so broad. [Plaintiff] was not merely 'any political entrant' in the presidential race. At the time he brought suit, he could have plausibly hoped to qualify [for the issue at hand]… At the time of filing, [the issue at hand was] scheduled to be determined at a definite date, soon enough in the future."

---

[5] "Sibley was not a candidate in the 2008 presidential election." *Sibley v. Obama*, 866 F. Supp. 2d 17, 20 (D.D.C. 2012), *aff'd*, No. 12-5198, 2012 WL 6603088 (D.C. Cir. Dec. 6, 2012).

26. Appellant asserts that *Becker* actually supports his position. At the time Appellant filed the case, Appellant "plausibly hoped to qualify" to be on the ballot with a ministerial paper filing and a $1,000 filing fee that was "scheduled to be determined at a definite date soon enough in the future."

## RELIEF REQUESTED

This Court's decision is fatally flawed in that the Original Verified Complaint sufficiently alleged competition, sufficiently stated Appellant's intent to appear on the ballot in accordance with Fed. R. Civ. P. 8(d)(3), and the evidentiary hearing confirmed that Appellant had pre-complaint campaign activities that targeted New Hampshire voters, several hundred dollars in campaign contributions, and that Plaintiff had followed through with his intent by paying the $1,000 filing fee to appear on the New Hampshire 2024 Republican Presidential Primary Ballot.

Based on the foregoing, Appellant requests a stay of 60 days.

Dated: December 20, 2023.          Respectfully submitted,

By: /s/ *John Anthony Castro*
John Anthony Castro
12 Park Place
Mansfield, TX  76063
(202) 594 – 4344
J.Castro@JohnCastro.com
**Plaintiff** *Pro Se*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I John Anthony Castro, verify under penalty of perjury, that all of the statements of fact and law herein are true and correct.

Executed on December 20, 2023.

/s/ John Anthony Castro
John Anthony Castro

## CERTIFICATE OF SERVICE

On December 20, 2023, I submitted the foregoing document with the Clerk of this Court either by mail, email, or CM/ECF. It is further certified that all other parties are registered CM/ECF users and will be served via that system.

/s/ John Anthony Castro
John Anthony Castro